

MAY 06 2015

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 13-21363-GLT |
| | Chapter 11 |
| JOSEPH C. FIORE and, | |
| MARION M. FIORE, | |
| Debtors. | |
| ALLY FINANCIAL serviced by | Related to Dkt. No. 161 |
| ALLY SERVICING, LLC, | |
| Movant, | |
| v. | |
| JOSEPH C. FIORE and, | |
| MARION M. FIORE, | |
| Respondents. | |

## MEMORANDUM OPINION

Ally Financial Services, LLC seeks relief from the automatic stay to pursue its remedies with respect to a 2008 Nissan Maxima. The Debtors, who recently converted their bankruptcy case after their chapter 13 plan failed, oppose the relief. After considering the arguments of each party, the Court granted Ally's request in an Order dated April 16, 2015 [Dkt. No. 161], and the Debtors now appeal. [Dkt. No. 165]. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law with respect to the Order.

### I.

The Debtors, Joseph and Marion Fiore, commenced this case on March 29, 2013 by filing a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code. According to their bankruptcy schedules, the Debtors own three motor vehicles: a 1998 BMW

528i, a 2002 Acura MDX, and the Nissan which is the subject of this Memorandum Opinion. [Dkt. No. 1, Schedule B]. The BMW and Acura are unencumbered, and the Debtors claimed exemptions under section 522 for only these two vehicles. [Id. at Schedules C and D]

As of the petition date, the Nissan had an estimated value of $15,083. [Id. at Schedules B, D]. Ally holds a lien against the Nissan to secure the repayment of amounts advanced for the Debtors' purchase of the vehicle. In its proof of claim, Ally asserts a secured claim against the Debtors in the amount of $16,055.46, inclusive of prepetition arrears of $274.96. The Debtors did not file an objection to the proof of claim.[1]

The Debtors proposed a series of chapter 13 plans but did not achieve plan confirmation until April 7, 2014. [Dkt. No. 87]. According to the confirmed plan, the Debtors agreed to cure and reinstate their obligation to Ally by making monthly contractual payments of $269.57, including an additional $274.69 to cure the existing prepetition arrears.

The Debtors struggled to remain current with their plan obligations, prompting the chapter 13 trustee to seek dismissal of the bankruptcy case. [Dkt. No. 99]. According to the trustee's motion, the Debtors accrued over $13,000 in plan arrearages through November 2014. Rather than lose the case to dismissal, and in lieu of curing the plan arrears, the Debtors sought a third option by requesting conversion of the case to chapter 11 of the Bankruptcy Code. The Court granted the request and converted the case, thereby rendering the trustee's motion to dismiss as moot. [Dkt. Nos. 108, 109].

---

[1] Pursuant to the Court's Order confirming the chapter 13 plan, Debtors' counsel was directed to review all claims filed in the bankruptcy case and bring any suitable claim objections within 90 days after the claims bar date. [Dkt. No. 87 at ¶2(C); see also W.PA.LBR 3021-1(c)(2))]. Absent a timely objection, the proof of claim will govern as to the classification and amount of the claim. Id. In this case, the chapter 13 claims bar date was July 29, 2013. [Dkt. No. 13]. The valuation and allowance of Ally's claim continues to apply in the chapter 11 proceeding. See 11 U.S.C. § 348(f).

2

As set forth in the *Trustee's Final Report and Account*, the trustee disbursed a total of $4,076.97 to Ally for its contractual monthly payments and $0 for the prepetition arrears. [Dkt. No. 116]. Ally subsequently amended its proof of claim (Proof of Claim 1-2) to reflect a total balance of $13,903.76, including arrears of $2,160.49 as of the conversion date.

In the three months since this case converted to chapter 11, the Debtors made no discernible progress towards reorganization. The Debtors' post-petition financial performance remains dismal and shows no signs of improvement. According to their monthly operating reports, the Debtors did not make any payments to secured creditors in January and February 2015, yet their net cash flow was a meager $23.25 per month during that span.[2] [Dkt. Nos. 134, 156]. Due to concerns about the Debtors' ability to remain current with their postpetition obligations, the Court scheduled a status conference to address these issues with the Debtors' counsel. [Dkt. No. 149].

At the status conference, counsel acknowledged that the Debtors could not propose a feasible chapter 11 plan unless they reached a resolution with their secured lenders regarding two mortgage liens, a state tax lien in excess of more than $40,000, and the Ally secured claim. Counsel admitted the Debtors were unable to modify their mortgage obligations in the chapter 13 proceeding but hoped for a different result in chapter 11 where "the parameters wouldn't be so restrictive [.]" [*Audio Transcript of Proceedings* dated April 9, 2015, 11:46:30 to 11:46:33]. When the Court asked if secured creditors were receiving adequate protection payments from the Debtors, it was told "not at this time." [Id. at 11:47:20 to 11:47:26]. In response, the Court reminded the Debtors that chapter 11 does not give debtors a pass from

---

[2]  The Debtors' monthly operating report for March 2015 was not considered at the April 16 hearing.

3

making payments on their secured obligations.[3] Absent significant improvement in the Debtors' financial condition, it appeared that the Debtors' case was on tenuous footing. As a result of these concerns, the Court indicated its intent to closely monitor the case.

On March 17, 2015, Ally filed its motion seeking relief from the stay on the grounds that its interest in the Nissan was not adequately protected due to a lack of insurance on the vehicle and the absence of monthly payments. [Dkt. No. 153]. The motion alleged that the Debtors were contractually due for the June 14, 2014 payment, and their continued use of the vehicle was contributing to a substantial depreciation in its current value. Ally also alleged that the Debtors lacked equity in the Nissan and it was not necessary to the Debtors' reorganization. [Id.] The Debtors opposed the motion, claiming that the vehicle is currently insured and that payments would be "provided for in Debtors' Chapter 11 Plan." [Dkt. No. 157]. The Court conducted a hearing on the motion and response on April 16, 2015 and thereafter issued its *Order Modifying Stay*. [Dkt. No. 161].

## II.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b).

Section 362(d) of the Bankruptcy Code provides that the automatic stay may be lifted when adequate protection is lacking or the debtor lacks equity in an asset that is nonessential to an effective reorganization:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay—

---

[3] From the monthly operating reports, the Court was left to question whether the Debtors fully appreciated their fiduciary obligations to the bankruptcy estate as debtors-in-possession. For instance, the February monthly operating report indicates an expenditure of $185 for "entertainment" during the same period in which secured creditors were unpaid. [Dkt. No. 156].

4

>  (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
>  (2) with respect to a stay of an act against property . . . if—
>  (A) the debtor does not have equity in such property; and
>  (B) such property is not necessary to an effective reorganization; . . .

11 U.S.C. § 362(d)(1)-(2). Whether the moving party has "cause" for relief must be determined on a case-by-case basis considering the totality of the circumstances. In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997). While the party moving for relief has the burden to prove that the debtor lacks equity in the property, it is the opposing party's burden to prove all other issues. See 11 U.S.C. § 362(g); Nazareth Nat. Bank v. Trina-Dee, Inc., 731 F.2d 170, 171 (3d Cir. 1984).

The Debtors failed to carry their burden by establishing that Ally's interest in the Nissan is adequately protected. At the April 16 hearing, the Debtors proffered no evidence to refute Ally's assertions that the postpetition contractual payments were woefully delinquent. While the Debtors disputed the severity of the arrearage, they conceded that Ally last received a full monthly payment in December 2014.[4] The Debtors also admittedly failed to make any adequate protection payments to Ally since the case converted to chapter 11. During that time, they continued to use the vehicle, thereby contributing to the depreciation in its value. From this record, the Court concludes that Ally's interest in the Nissan is not adequately protected because it is not receiving payments to compensate it for the lost value attributable to the Debtors' continued use and possession of the vehicle.

---

[4] As noted above, Ally received payments totaling $4,076.97 while the case was pending in chapter 13. [Dkt. No. 116]. Since the monthly payment obligation to Ally was $269.57, the trustee's distribution is equivalent to approximately 15 monthly payments. Considering that the bankruptcy case was 23 months old at the time of the hearing, the Court found merit in Ally's contention that the Debtors were at least eight months behind in their postpetition payments on this account.

The Debtors only defense to the motion was to represent that they had recently contacted Ally's counsel and were ready to negotiate adequate protection payments for the Nissan. From these statements, the Court discovered that actual discussions had not yet occurred. The Debtors offered no explanation as to why they waited until the eve of the hearing to begin this process. Ally filed its motion nearly one month prior to the hearing date and the Debtors' response was submitted 10 days in advance. This afforded the parties ample time to at least exchange proposals regarding an adequate protection arrangement. The Debtors not only failed to extend an offer, they were unable to commit to an adequate protection payment during the April 16 hearing. Without a firm offer of adequate protection, and in the absence of sufficient cash flow to suggest the Debtors possess the ability to fulfill these obligations, the Court concludes that Ally is entitled to relief from the automatic stay to pursue its rights under applicable nonbankruptcy law. Upon reaching this conclusion, the Court finds no need to consider whether relief is appropriate under section 362(d)(2).

Dated: 5/5/2015

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case Administrator to Mail to:
Debtors
Brian Thompson, Esq.
Brett Solomon, Esq.
Office of the U.S. Trustee